UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
CIVIL DIVISION

| | |
|---|---|
| YENDY CRUZ,<br>ON BEHALF OF HERSELF AND<br>ALL OTHERS SIMILIARLY SITUATED,<br><br>　　　　　　　　　　　Plaintiff,<br>　　v<br><br>CREDIT CONTROL SERVICES, INC.,<br>D/B/A CREDIT COLLECTION SERVICES<br><br>　　　　　　　　　　　Defendant. | Civil Action, File No.<br>2:17-cv-01994-ADS-GRB |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

**STATEMENT OF FACTS**

Defendant sent Plaintiff the letter annexed as Exhibit A to the Complaint ("Letter"). The Letter identifies Geico Indemnity Company as the "creditor". Defendant sent Plaintiff the Letter in an attempt to collect a debt owed to Geico Indemnity Company. Plaintiff owed this debt to Geico Indemnity Company. The Letter set forth an "Amount of the Debt" of $166.97. The Letter does not set forth that the "Amount of the Debt" of $166.97 may increase due to interest, late charges, and/or other charges. The Letter does not offer to allow Plaintiff to pay a particular amount by a particular date.

**DEFENDANT'S OVERALL ARGUMENT REGARDING THE APPLICATION OF *AVILA***

The crux of Defendant's overall argument regarding the inapplicability of *Avila* is as follows:

1

a.) Approximately five weeks after the date of the Letter, Defendant sent Plaintiff a collection notice in an attempt to collect the same debt; and this collection notice set forth the same "Amount of the Debt" of $166.97; and

b.) Plaintiff does not allege that Defendant or any other entity actually exercised or even planned to exercise any purported right to charge Plaintiff interest, late charges, and/or other charges in addition to the "Amount of the Debt" of $166.97.

**DEFENDANT INCORRECTLY INTERPRETS *AVILA***

Defendant's motion to dismiss is a motion pursuant to Rule 12(b)(6). "[A] Rule 12(b)(6) motion challenges the complaint as presented by the plaintiff… [; and in deciding a] Rule 12(b)(6) motion, a court does not look beyond "facts stated on the face of the complaint, . . . documents appended to the complaint or incorporated in the complaint by reference, and . . . matters of which judicial notice may be taken." Goel v. Bunge, Ltd., 820 F.3d 554, 558-559 (2nd Cir., 2016).

The Complaint as presented by Plaintiff alleges and the facts stated on the face of the Complaint set forth that interest, late charges, and/or other charges were accruing on the "Amount of the Debt" of $166.97. In Sperber v. Central Credit Services, LLC, 16-CV-5222 (ARR) (RLM), 2017 WL 1737702 (EDNY) (2017), Judge Ross expressly rejected arguments regarding the inapplicability of *Avila* which were identical to the Defendant's aforementioned arguments; and Judge Ross also explained that a Defendant cannot succeed on its Rule 12(b)(6) motion in the face of allegations that interest, late charges, and/or other charges were accruing on the debt:

> "According to CCS, *Avila* does not apply because Sperber failed to "allege any facts showing CCS increased the amount the company sought to collect from [Sperber] pursuant to the CPLR Provisions." *Id.* at 10. CCS had apparently "waive[d]" its "right to charge [post-judgment] interest," and it was "not required

2

> to explain that to the consumer." Def.'s Reply Mem. in Supp. of Mot. For J. on the Pleadings at 2, Dkt. #19-4. … CCS argues that the plaintiffs in the cases summarized above prevailed only if they were able to show that interest was actually accruing on their debt when they received debt collection notices. That is not accurate. The Second Circuit in *Avila* rested its ruling on plaintiff's *allegation* that interest was accruing daily on her debt. *Avila,* 817 F.3d at 74. Conversely, in *Dick,* the court dismissed plaintiff's claim because he *did* "*not allege* that the balance stated in the [collection] Letter was not a complete and accurate representation of the amount owed, or that the balance stated in the Letter may increase over time due to interest and fees." *Dick*, 2016 WL 5678556, at *5 (emphasis added); *cf. Santibanez*, 2017 WL 126111, at *3 (granting defendant's motion for summary judgment where it was undisputed that interest was not accruing on plaintiff's debt). Sperber has made such an allegation here, which is sufficient to survive a motion for judgment on the pleadings under *Avila. Cf. McNamee*, 2016 WL 5391396, at *3 (denying motion to dismiss where plaintiff alleged that defendant did not disclose that it had stopped collecting post-judgment interest). It is true that the court in *Douglass* noted that interest was, in fact, accruing on plaintiff's debt, but the court was considering a motion for summary judgment, not a motion for judgment on the pleadings. *See Douglass*, 2016 WL 6248824, at *2. Indeed, whether or not interest was accruing on Sperber's debt when CCS sent its collection letters is a factual question that I cannot resolve on a motion for judgment on the pleadings. *See McNamee*, 2016 WL 7407379, at *3 (holding that whether interest was accruing on plaintiff's debt presented a genuine issue of material fact that precluded summary judgment). Simply put, CCS cannot obtain a judgment in its favor at this stage by disputing a factual allegation in Sperber's complaint. Having alleged that interest was accruing on his debt and that CCS failed to either disclose this interest or otherwise disclaim its right to collect it, Sperber has stated a plausible claim that the collection notices he received from CCS were misleading under Section 1692e of the FDCPA. *See Avila*, 817 F.3d at 76."

For the reasons explained in Sperber, *supra*, Defendant incorrectly relies on Dick v. Enhanced Recovery Co., LLC, No. 15-CV-2631 (RRM) (SMG), 2016 U.S. Dist. LEXIS 135789 (E.D.N.Y. Sept. 28, 2016).

Defendant also incorrectly relies on Taylor v. Financial Recovery Services, Inc., No. 1:16-cv-04685 – LGS, 2017 U.S. Dist. LEXIS 76243 (S.D.N.Y May 18, 2017).  The court's holding in Taylor, *supra* is as follows:

> "Summary judgment is granted in favor of FRS on Count One because the letters' failure to state that interest or fees had stopped accruing does not violate § 1692e as a matter of law."

3

Plaintiff's Complaint in no manner or form alleges that the Letter violates § 1692e because it failed to state that interest or fees had stopped accruing. Plaintiff's Complaint alleges the opposite. The Complaint as presented by Plaintiff alleges and the facts stated on the face of the Complaint set forth that interest, late charges, and/or other charges were accruing on the "Amount of the Debt" of $166.97.

Defendant also relies on a pre-*Avila* case and a case from outside this Circuit which have discussed and distinguished *Avila*. The pre-*Avila* case is irrelevant since whether or not Plaintiff has stated a claim of a violation of 1692e per *Avila* should be based only on the contents of *Avila*. As regards cases from outside this Circuit which have discussed *Avila*, those courts are not bound by *Avila*. This could have an effect on the way a court interprets and applies *Avila*.

Defendant's arguments also are akin to an argument by a debt collector that it should not be liable under the FDCPA based on a non-intentional act. If interest, late charges, and/or other charges were accruing on the debt and the Letter did not contain appropriate safe-harbor language, Defendant is strictly liable.

**THE FIRST CAUSE OF ACTION IS A PROPERLY PLEAD *AVILA* CLAIM**

The First Cause of Action of the Complaint in the case at bar does not allege a violation based on an omission from the Letter of a statement setting forth that Plaintiff must also pay CPLR §5001(a) interest at an annual rate of 9%. The First Cause of Action of the Complaint alleges nothing more than that per NY CPLR 5001 interest is accruing and therefore the Letter improperly omits the "safe harbor language" required by *Avila*; and while *Avila* requires some reference to the accrual of interest, *Avila* does not require that this "safe harbor language" include any express statement that Plaintiff must also pay CPLR §5001(a) interest at an annual rate of 9%.

Defendant incorrectly relies on the pre-*Avila* case of Bird v. Pressler & Pressler, L.L.P. (E.D.N.Y., 2013) 12-cv-3007 (JS)(ETB), 2013 U.S. Dist. LEXIS 74682 (E.D.N.Y. May 29, 2013). In Bird, *supra*, the Complaint alleged that the amount owed stated in the collection letter was false. Here, the collection letter set forth an "Amount of Debt" of $166.97. Plaintiff is not alleging that this is a false statement.

In fact, in *Avila* the Second Circuit expressly rejected the lower court's position that the accuracy on the date of the collection notice of the amount of the debt set forth on the collection notice was relevant for determining a collection notice's compliance with 1692e:

> "We do not conclude that Congress's requiring debt collectors to state "the amount of the debt" in Section 1692g evinces Congressional approval of sending collection notices that lack disclosures about accruing interest and fees." *Avila* at 76.

Plaintiff is not alleging that $166.97 was not the "Amount of Debt" on the date of the Letter. Instead, Plaintiff is alleging that based on the nature of the debt and the validity of the debt per NY CPLR 5001 interest is accruing; this accrual commences on the day after the date of the Letter; on the day after the date of the Letter the creditor had a guaranteed legal right to $166.97 plus interest; the balance therefore is not static; and therefore *Avila* required the Letter to contain some type of safe harbor language that the "Amount of Debt" of $166.97 may increase or "clearly state that the holder of the debt will accept payment of the amount set forth in full satisfaction of the debt if payment is made by a specified date.". Balke v. Alliance One Receivables Mgmt., Inc. 16-cv-5624(ADS)(AKT) (E.D.N.Y., 2017). As evidenced by the Second Circuit's aforementioned differentiation between the "amount of debt" for purposes of 1692g and disclosures about "accruing interest and fees" for purposes of compliance with 1692e, these allegations sufficiently plead a claim of a violation of 1692e based on *Avila*.

5

In addition to the aforementioned crux of Defendant's arguments, Defendant also argues for dismissal of the First Cause of Action in particular since no prejudgment interest is due until judgment is rendered, the Letter did not threaten a lawsuit, and there was no lawsuit intended. All of this is irrelevant under *Avila*.

Per NY CPLR 5001, interest on a debt based on quantum meruit or a contract, such as the debt in the case at bar, begins to run from the day after the date of the Letter. Tesser v. Allboro Equip. Co., 904 N.Y.S.2d 701, 73 A.D.3d 1023 (N.Y. App. Div., 2010). Also, where a debt is based on quantum meruit or a contract, an award of NY CPLR 5001 interest is mandatory or guaranteed. Presse v. Morel 15-1227 (2nd Cir., 2016) (Summary Order):

> "The award of [prejudgment] interest is generally within the discretion of the district court and will not be overturned on appeal absent an abuse of that discretion," except where such interest is awarded "as a matter of right" under New York law. New England Ins. Co. v. Healthcare Underwriters Mut. Ins. Co., 352 F.3d 599, 603 (2d Cir. 2003). Section 5001(a) of the New York Civil Practice Law and Rules provides that prejudgment interest is mandatory except "in an action of an equitable nature." N.Y. C.P.L.R. 5001(a). New York case law holds that prejudgment interest is mandatory with respect to a quantum meruit *cause of action*, see, e.g., Tesser v. Allboro Equip. Co., 904 N.Y.S.2d 701, 705 (App. Div. 2d Dep't 2010); Ogletree, Deakins, Nash, Smoak & Stewart, P.C. v. Albany Steel, Inc., 663 N.Y.S.2d 313, 315 (App. Div. 3d Dep't 1997),[1] which is a claim sounding in quasi-contract, Hudson View II Assocs. v. Gooden, 644 N.Y.S.2d 512, 516 (App. Div. 1st Dep't 1996)."

In addition, the FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction . . . , **whether or not such obligation has been reduced to judgment** (*emphasis added*)." 15 U.S.C. § 1692a(5).

*Avila* is about whether a collection notice informs the consumer of the amount of the "debt" in a manner that is not "false, deceptive or misleading". The Second Circuit's main concern and reason for its decision in *Avila* that the collection notice was "misleading" and therefore violated 1692e was that without appropriate safe harbor language, the "least

6

sophisticated consumer" would not know at the time she paid the amount set forth on the collection notice "whether the debt has been paid in full". See *Avila* at 75-76:

> "[A] collection notice can be misleading if it is "open to more than one reasonable interpretation, at least one of which is inaccurate." *Clomon,* 988 F.2d at 1319. Applying these principles, we hold that plaintiffs have stated a claim that the collection notices at issue here are misleading within the meaning of Section 1692e. A reasonable consumer could read the notice and be misled into believing that she could pay her debt in full by paying the amount listed on the notice. In fact, however, if interest is accruing daily, or if there are undisclosed late fees, a consumer who pays the "current balance" stated on the notice will not know whether the debt has been paid in full.

The Second Circuit then went on to explain that requiring these disclosures in a collection notice "also protects consumers such as plaintiffs who may hold the reasonable but mistaken belief that timely payment will satisfy their debts.". *Avila*, at 76. The Second Circuit then went on to hold that "a debt collector will not be subject to liability under Section 1692e for failing to disclose that the consumer's balance may increase due to interest and fees if the collection notice … clearly states that the **holder of the debt** (*emphasis added*) will accept payment of the amount set forth in full satisfaction of the debt **if payment is made by a specified date** (*emphasis added*)."

The Second Circuit also explained the reason that the "least sophisticated consumer" would not know at the time she paid the amount set forth on the collection notice "whether the debt has been paid in full":

> In fact, however, if interest is accruing daily, or if there are undisclosed late fees, a consumer who pays the "current balance" stated on the notice will not know whether the debt has been paid in full. The debt collector could still seek the interest and fees that accumulated after the notice was sent but before the balance was paid, **or sell the consumer's debt to a third party, which itself could seek the interest and fees from the consumer**. (*emphasis added*)" *Avila* at 76.

7

This ability for the debt to be sold and the resulting consequences as one of the reasons for the Second Circuit's holding in *Avila* defeats the aforementioned crux of Defendant's arguments as well as Defendant's argument about no prejudgment interest is due until judgment is rendered, the Letter not threatening a lawsuit, and there being no intended lawsuit.

A debt collector such as Defendant who is attempting to collect a debt on behalf of a third-party creditor does not own the debt, and therefore cannot sell the debt. The third-party creditor owns the debt; and therefore, notwithstanding Defendant's above arguments, the third-party creditor could "**sell the consumer's debt to a third party, which itself could seek the interest and fees from the consumer**".

 An assignee of the consumer's debt "could seek the interest and fees from the consumer" only if on the date of the collection notice the creditor on whose behalf the debt collector was attempting to collect the debt had a legal right to collect from the consumer interest, late charges, and/or other charges in addition to the amount of the debt set forth in the collection notice and this right was not waived by a prior failure actually to seek interest, late charges, and/or other charges in addition to the amount of the debt set forth in the collection notice. See Matter of International Ribbon Mills [Arjan Ribbons], 36 NY2d 121, 126 (1975) ("It is elementary ancient law that an assignee never stands in any better position than his assignor."). See also Tpz Corp. v. Dabbs, 25 AD3d 787, 808 NYS2d 746, 2006 NY Slip Op 649 (N.Y. App. Div., 2006). In the Complaint, Plaintiff alleges that the creditor had the aforementioned rights and that these rights were not waived. As regards the absence of any waiver by the creditor see Gaia House Mezz LLC v. State St. Bank & Trust Co. Docket No. 12-2481-cv (2nd Cir., 2013).

According to the Second Circuit, the fact that the "debt collector could still seek the interest and fees that accumulated after the notice was sent but before the balance was paid" was

8

the other "reason that the "least sophisticated consumer" would not know at the time she paid the amount set forth on the collection notice "whether the debt has been paid in full". A debt collector such as Defendant who is attempting to collect a debt on behalf of a third-party creditor does not own the debt. The third-party creditor owns the debt. Therefore, after the date of the collection notice and notwithstanding Defendant's above arguments, the third-party creditor could hire an attorney to file a lawsuit to collect the "Amount of Debt" plus interest, such as the interest per NY CPLR 5001, and late charges, and/or other charges in addition to the amount of the debt set forth in the collection notice.

As set forth above, the Second Circuit differentiated between the accuracy of the amount of the debt for purposes of 1692g as opposed to disclosures about accruing interest and fees for purposes of compliance with 1692e. As set forth above, the Second Circuit also focused on the events that could occur after the date of the collection notice.

Per NY CPLR 5001, interest on a debt based on quantum meruit or a contract begins to run from the day after the date of the collection notice and is mandatory or guaranteed. Based on these facts and based on the FDCPA's definition of a "debt", the interest which is accruing per NY CPLR 5001 is a "debt" even absent a judgment or threat of a lawsuit. See also Lee v. Joseph E. Seagram & Sons, Inc., 592 F.2d 39, 41, 43 (C.A.2 (N.Y.), 1979):

> "The real concern of the parties to this appeal, however, is the overwhelming percentage of the interest award which **accrued** (*emphasis added*) prior to the verdict under N.Y.C.P.L.R. § 5001. … The plaintiffs were unquestionably entitled to pre-judgment interest from some date…"

Based on the above, just an in *Avila*, the $166.97 owed to Geico Indemnity Company set forth in the Letter was not static. Instead, just an in *Avila*, despite Defendant's actions or intentions or the content of the Letter, interest was in fact accruing on the $166.97 owed to Geico Indemnity Company.

As explained in *Avila* at 76, Geico Indemnity Company could have sold Plaintiff's debt to a third party and such third party could seek the interest that accrued after the collection letter was sent but before the $166.97 owed to Geico Indemnity Company was paid. Even if Geico Indemnity Company assignees' legal right to seek the accrued interest required a lawsuit and a Judgment, the accrued interest still could be sought by the assignee, and an award of NY CPLR 5001 accrued interest is mandatory or guaranteed. Lee, *supra*. The holding in *Avila* is not based on the steps required to seek the accrued interest. Instead, the holding is based entirely on whether or not interest is actually accruing and could be sought by the creditor or its assignee. See *Avila* at 76 and the above quoted portion of Sperber, *supra*.

There would be no reason for the aforementioned portion of the Second Circuit's decision on *Avila* at 76 regarding the sale of the consumer's debt if the Second Circuit intended the scope of its holding in *Avila* to exclude from the scope of the holding letters which did not somehow threaten litigation or where the legal right to seek the accrued interest required a lawsuit and a Judgment.

From the Letter, Plaintiff could believe that her payment of the "Amount of the Debt", at any time in the future, would result in the full satisfaction of her debt. But, as explained above, this belief could be incorrect if certain events occurred after the date of the Letter, i.e. the sale of the debt by the creditor or the creditor changing its mind about seeking interest, late charges, and/or other charges in addition to the amount of the debt set forth in the collection notice. Therefore, since the Letter did not contain any safe-harbor language and did not clearly state that the holder of the debt will accept payment of the amount set forth in full satisfaction of the debt if payment is made by a specified date, once Defendant mailed the Letter, Defendant lost the ability to control whether Plaintiff's payment at any time after her receipt of the Letter would

result in the full satisfaction of her debt. Under these circumstances, the Letter could mislead a "least sophisticated consumer" in violation of 1692e for the reasons set forth in Avila, *supra* at 76.

Therefore, based on the above, *Avila* is applicable if on the date of the collection notice the third-party creditor on whose behalf the debt collector was attempting to collect the debt had a legal right to collect from the consumer interest, late charges, and/or other charges in addition to the amount of the debt set forth in the collection notice and this right was not waived by a prior failure actually to seek interest, late charges, and/or other charges in addition to the amount of the debt set forth in the collection notice. This is exactly what Plaintiff alleges in the First Cause of Action. Therefore, the allegations in the First Cause of Action sufficiently plead a claim for a violation of 1692e based on *Avila* regardless of the accuracy on the date of the collection notice of the "Amount of the Debt" set forth on the collection notice or the actions or intentions of a debt collector such as Defendant.

**THE SECOND CAUSE OF ACTION IS A PROPERLY PLEAD *AVILA* CLAIM**

The Second Cause of Action alleges that Geico Indemnity Company and any assignee or successor-in-interest, via an agreement between Plaintiff and Geico Indemnity Company or as set forth in an invoice or bill or statement received by Plaintiff from Geico Indemnity Company, had a legal right charge to charge Plaintiff interest, late charges, and/or other charges in addition to any "Amount of the Debt". The Second Cause of Action also alleges that this right was not waived by a prior failure actually to seek interest, late charges, and/or other charges in addition to the "Amount of the Debt" set forth in the collection notice. Therefore, for the same reasons as set forth above in regard to events which could occur after the date of the collection, i.e. the sale of the debt by the creditor or the creditor changing its mind about seeking interest, late charges,

and/or other charges in addition to the amount of the debt set forth in the collection notice., the allegations in the Second Cause of Action sufficiently plead a claim for a violation of 1692e based on *Avila* regardless of the accuracy on the date of the collection notice of the "Amount of the Debt" set forth on the collection notice or the aforementioned crux of Defendant's arguments.

**VIOLATION OF 1692e(14)**

As alleged in paragraph 10 of the Complaint, Credit Control Services, Inc. is a New York Foreign Business Corporation with a principal place of business located at Two Wells Avenue, Newton, MA 02459.  New York General Business Law 130 provides as follows:

> "1.   No person shall hereafter (i) carry on or conduct or transact business in this state under any name or designation other than his or its real name, or (ii) carry on or conduct or transact business in this state as a member of a partnership, unless:
> (a) Such person, if other than a corporation, limited partnership or limited liability company, shall file in the office of the clerk of each county in which such business is conducted or transacted a certificate setting forth the name or designation under which and the address within the county at which such business is conducted or transacted, the full name or names of the person or persons conducting or transacting the same, including the names of all partners, with the residence address of each such person, and the age of any person less than eighteen years of age.  Each certificate shall be executed and duly acknowledged by the person or, if there be more than one, by all of the persons conducting the business.
>
> (b) Such person, if a corporation, limited partnership or limited liability company, shall file, together with the fees as set forth in subdivision five of this section, in the office of the secretary of state a certificate setting forth the name or designation under which business is carried on or conducted or transacted, its corporate, limited partnership or limited liability company name, the location including number and street, if any, of its principal place of business in the state, the name of each county in which it does business or intends to do business, and the location including number and street, if any, of each place where it carries on or conducts or transacts business in this state.  Each certificate shall be executed by an officer of the corporation, a general partner of the limited partnership, a member or manager of a limited liability company, or an attorney-in-fact or authorized person for such corporation, limited partnership, or limited liability company, as the case may be.  A corporation which carries on or conducts or transacts business in this state as a member of a partnership or limited liability

12

company shall not be required solely by reason thereof to file the certificate required by this paragraph if the partners shall have filed the certificate required by paragraph (a) of this subdivision.

1-a.   As used in this section, unless the context otherwise requires:

(a) "Person" shall mean an individual, partnership, limited partnership, corporation, limited liability company and unincorporated association;
(b) The "real name" of a corporation shall mean its corporate name as set forth in its certificate of incorporation;  the "real name" of a limited partnership shall mean its name as set forth in its certificate of limited partnership;  the "real name" of a limited liability company shall mean its name as set forth in its articles of organization and any generally accepted, understood or recognizable abbreviations of such names.
(c) The use by a corporation, limited partnership or limited liability company of a divisional, departmental or trade name or designation, in conjunction with the real name of the corporation, limited partnership or limited liability company, shall be deemed to be the use of the real name of the corporation, limited partnership or limited liability company, for purposes of this section."

Per New York General Business Law 130, "Credit Collection Services" cannot be Defendant Credit Control Services, Inc.'s "real name" in New York unless Defendant Credit Control Services, Inc. complied with General Business Law 130 1. (b).  Paragraph 39 of the Complaint alleges that "Credit Collection Services" was not registered in New York as a trade name of Credit Control Services, Inc.  Defendant's Motion to Dismiss does set forth otherwise.

15 USC 1692e(14) requires a debt collector to use the debt collector's "true name"; but "the FDCPA does not say "what a 'true name' is …" Sheriff v. Gillie, 136 S. Ct. 1594, 1602, 194 L. Ed. 2d 625 (2016).  However, of course the purpose of the FDCPA is to protect the "least sophisticated consumer" from improper debt collection practices.  Also, the FDCPA "must [be] construe[d] [ ] 'in liberal fashion [to achieve] the underlying Congressional purpose.' ".  *Avila* at 75.  Since the case at bar is about the use of a collection letter to collect a debt from a New York consumer residing in Freeport, NY, the "least sophisticated consumer" in the case at bar is a New York consumer.  If "Credit Collection Services" was not registered in New York outside of New York City as a trade name of Credit Control Services, Inc., "Credit Collection Services" was not

13

Defendant's "true name" especially outside of New York City. Moore v. National Account Systems, Inc., No. 91 CV 35, 1991 WL 313896, *1, 1991 U.S. Dist. LEXIS 18137, at *2 (D.Conn. Nov. 13, 1991) (holding that the name under which a debt collector is licensed to do business is the debt collector's "true name" for purposes of the FDCPA); and Kizer v. Amer. Credit & Collection, 1990 WL 317475, at * 6 (D. Conn. Dec. 17, 1990) ("[T]he court holds that the name under which a debt collector is licensed to do business in the state of Connecticut is the debt collector's true name for purposes of the FDCPA.").. Therefore, for the purposes of Defendant's Letter to Plaintiff who resides in Freeport, NY, Defendant did not use its "true name" in the Letter. Contrast with Orenbuch v. North Shore Health Systems, Inc., 250 F.Supp.2d 145, 151-152 (E.D.N.Y., 2003):

> The plaintiff claims that NSHS violated Section 1692e(14), which prohibits the use of anything but the "true name" of the debt collector. 15 U.S.C. 1692e(14). The defendants correctly argue that there is nothing misleading about a debt collector (RCRS) using the name by which it is known to the public where, as here, that name is a registered trade name with the New York Department of State. It is undisputed that, (1) "RCRS" is the registered trade name with the New York Department of State since 1992; (2) RCRS has been licensed with the New York City Department of Consumer Affairs since 1994; and (3) RCRS is the name by which it transacts business and holds itself out to the public. Thus, because RCRS letters refer to RCRS's "true name," it does not constitute a "false deceptive or misleading representation." 15 U.S.C. § 1692e; *see Moore v. National Account Systems, Inc.*, No. 91 CV 35, 1991 WL 313896, *1, 1991 U.S. Dist. LEXIS 18137, at *2 (D.Conn. Nov. 13, 1991) (holding that the name under which a debt collector is licensed to do business is the debt collector's "true name" for purposes of the FDCPA).

As regards the issue of materiality, in a case also alleging a violation of 1692e(14), the court in Boyko v American International Group, et. al., Case No. 08-cv-02214 (District Court, NJ) (December 23, 2009) held that a violation of 1692e(14) is a per se deceptive act thereby eliminating any requirement to find "materiality":

> "1692e (14) "does not require an affirmative pleading that a person was mislead by the use of an improper name; indeed such deception is

14

> assumed where a party pleads that he received an improper communication. Section 1692e begins by stating: "A debt collector may not use any false, deceptive, or misleading representations in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section[.]" From there, the statute specifically lists sixteen prohibited actions. Subsection 14 does not include any language to the effect of "that deceives the party." Thus, subsection 14 must be read to be a per se deceptive act. In other words, if a party can prove, for example, that he received a letter using a name other than the debt collector's true name, he has proven a deceptive practice."

In addition, various courts also have held that a misrepresentation regarding a name is a material misrepresentation. See McGinty v. Prof'l Claims Bureau, Inc. 15-cv-4356 (E.D.N.Y., 2016); Eun Joo Lee v. Forster & Garbus LLP, 926 F.Supp.2d 482, 486 (E.D.N.Y., 2013); Datiz v. Int'l Recovery Assocs., Inc. 15-cv-3549 (E.D.N.Y., 2016); Tourgeman v. Collins 2 Financial Servs. (9th Cir. 2014); Wallace v. Wash. Mut. Bank, F.A., 683 F.3d 323, 327–28 (6th Cir. 2012).

Contrary to Defendant's argument, Plaintiff's Complaint does not allege that Defendant violated state law and therefore automatically violated the FDCPA. A failure to comply with state law has been held to be the basis for a violation of the FDCPA as long as the violation of the state law results in a debt collection practice which is for example "false, deceptive, or misleading". Plaintiff is alleging that Defendant violated the FDCPA by failing to use its "true name" as required by 1692e(14); and per 1692e(14), the failure to use a "true name" is "false, deceptive, or misleading". State law is relevant only for the purpose of determining whether or not Defendant used its "true name". This is consistent with the above courts' holdings that a "true name" is consistent with the name under which a debt collector is licensed with a State.

A failure to comply with state law has been held to be the basis for violations of other provisions of the FDCPA as long as the violation of the state law results in a debt collection practice which is for example "false, deceptive, or misleading". For example, New York State

15

Law requires a judgment debtor to be notified by the assignor of the assignment of a judgment as a prerequisite for the assignee to enforce the judgment. The court in Musah v. Houslanger & Assocs., PLLC, 962 F. Supp. 2d 636 (S.D.N.Y., 2013); and Moukengeschaie v. Eltman, Eltman & Cooper, P.C. 14-CV-7539 (MKB) (E.D.N.Y., 2016) both found violations of 1692e based on a debt collector attempting to enforce a judgment on behalf of an assignee in the absence of notification to the judgment debtor by the assignor of the assignment. See also Madden v. Midland Funding, LLC 11-cv-8149 (CS) (S.D.N.Y., 2017):

> "Plaintiff is correct that predicating FDCPA claims on violations of state usury laws "is a well-established theory of FDCPA liability." (P's Supp. Mem. 7.) *See Stratton v. PortfolioRecovery Assocs., LLC*, 770 F.3d 443, 450-51 (6th Cir. 2014) (attempting to collect interest without right to do so could be violation of §§ 1692e(2), (5) and § 1692f(1)); *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 406-08 (3d Cir. 2000) (collecting interest at usurious rate, *i.e.*, rate prohibited by state law, constitutes violation of § 1692f(1)); *Gerstle v. Nat'l Credit Adjusters, LLC*, 76 F. Supp. 3d 503, 512 (S.D.N.Y. 2015) (attempting to collect usurious debt "constitutes an unlawful threat under the FDCPA"); *see also Tuttle v. Equifax Check Servs.*, 190 F.3d 9, 13 (2d Cir. 1999) (under § 1692f(1), "[i]f state law expressly prohibits service charges, a service charge cannot be imposed even if the contract allows it")."

**OPPORTUNITY TO AMEND COMPLAINT**

To the extent this court finds deficiencies in the allegations in the Complaint, Plaintiff requests an Order allowing her to amend her Complaint.

**DISMISSAL BASED ON PLEA OF OTHER SUIT PENDING**

Defendant's motion incorrectly applies the "plea of other suit pending" rule. Two of the case relied on by Defendant are James v. At & T Corp., 334 F.Supp.2d 410 (S.D.N.Y., 2004) and Curtis v. Citibank, 226 F.3d 133 (2nd Cir., 1999). In Curtis, *supra* at 140-141, the Second Circuit partly reversed the dismissal of the second filed lawsuit:

> "The dismissal of Curtis II therefore must be reversed in part. Plaintiffs may proceed on their Curtis II claims of retaliation and constructive discharge to the extent they arise out of events occurring subsequent to the filing of the first

> amended complaint in Curtis I. This result balances the trial court's need to manage and ultimately decide its cases with the plaintiffs' right to litigate all of Citibank's allegedly unlawful conduct. Once Curtis I is decided, questions of issue preclusion may arise, but it would obviously be speculative to discuss them now."

In James, *supra* at 411-412, one reason the court found the second lawsuit duplicative and subject to dismissal was as follows:

> "The *James* complaint includes no claims or facts that have arisen subsequent to the filing of *Leykin.* See *Curtis,* 226 F.3d at 140-41 (dismissing duplicative claims brought in order to circumvent a ruling denying leave to amend, but allowing claims based on actions that post-dated the original action to proceed)."

The case at bar is based on a debt collection letter dated November 27, 2015. The earlier filed action of *Kristina Shields v. Credit Control Services, Inc.*, 2:17-cv-00121 (JS)(GRB) (E.D.N.Y.) is based on a debt collection letter dated September 17, 2015. Also, Plaintiff's claims are based on Avila v. Riexinger & Assocs., LLC, 817 F.3d 72 (2nd Cir., 2016), and in part therefore are dependent on the terms of the relationship between the creditor and Plaintiff. There is a different creditor in the case at bar and the earlier filed action, Labcorp. Contrast the two cases at issue in this motion with another case cited by Defendant in its motion, Morency v. Vill. of Lynbrook P.O., 1 F.Supp.3d 58, 62 (E.D.N.Y., 2014), in which Judge Hurley found that "both Complaints are based on the same operative facts and include the same causes of action". Here, Defendant's motion points out at least one difference in the causes of action.

Furthermore, while each case is a proposed class action, there has been no determination regarding whether Plaintiff in the earlier filed action as opposed to Plaintiff in the case at bar and visa versa would make an adequate class representative.

**CONSOLIDATION**

*Cruz II* is assigned to your Honor as well as to the Magistrate assigned to this case. In *Cruz II*, Defendant has filed and served an Answer. The outcome of this motion will have a

17

direct effect on the outcome of *Cruz II*. Therefore, this portion of Defendant's motion should be denied without prejudice to renew, if needed, subsequent to this court's decision on the other aspects of this motion. In the alternative, Plaintiff has no objection to a consolidation merely to the extent of having the schedule for discovery, motions, etc. be the same in both cases.

Plaintiff objects to a consolidation which results in the loss of an ability to obtain separate judgments since *Cruz II* is based on a separate letter sent subsequent to the Letter in the case at bar. See Goins v. Jbc & Associates, P.C., 352 F.Supp.2d 262, 267 (D. Conn., 2005):

> "There is no prohibition in the FDCPA against separate lawsuits for separate statutory violations of the FDCPA by the same defendant. Where, as here, the subsequent action is not duplicative and would not be barred under the claim preclusion doctrine, plaintiff may avail herself of the serendipity of an additional FDCPA violation by the same defendant subsequent to initiation of a prior lawsuit and thereby avoid a per action damages limitation, as is undoubtedly plaintiff's strategy here."

Dated: July 5, 2017

/s/_____
Mitchell L. Pashkin, Esq. (MLP-9016)
Attorney For Plaintiff
775 Park Avenue, Suite 255
Huntington, NY 11743
(631) 629-7709